## No. 13,814.

### LEMON *v.* GIRARDOT ET AL.
(65 P. [2d] 1427)

Decided December 31, 1936.

Mr. BENJAMIN C. HILLIARD, JR., for plaintiff in error.

Mr. B. F. REED, Mr. MYLES P. TALLMADGE, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, a taxpayer, was allowed before judgment to intervene in a suit commenced June 29, 1934, by School District No. 2 of Elbert county and two of its directors as plaintiffs against three defendants who had been directors of the district prior thereto, for an accounting, or in lieu thereof, to recover the sum of $15,000. Judgment was against plaintiffs and upon their failure or refusal to have the judgment reviewed, the intervener now prosecutes the writ of error herein. He will be designated as intervener and reference will be made to the defendants as the board.

The school district was organized in 1920 and issued bonds in the sum of $34,000 for the purpose of erecting a school house. In 1930, under statutory authority conferred by a school election, refunding bonds, to retire those outstanding in the sum of $34,000, were issued. The bonds were prepared, signed and certified by the board of school directors and on about July 1, 1930, were delivered, upon a written receipt, to a representative of the United States Bond Company under a contract whereby the company was to effect an exchange of the new or refunding bonds for the old outstanding bonds. In January following, the school board learned upon investigation that the bonding company had ceased business operations, was in debt, had no assets, and that some of its officers had left the state. It then was discovered that refunding bonds of the face value of $4,000 had not been disposed of by the bonding company and these were redelivered to the school board by an attorney representing the company, together with old bonds of the district of the face value of $15,000 for which the exchange had been made; but the remainder of the refunding bonds of the face value of $15,000 could not then be found, and it later was discovered that they were in the hands of innocent purchasers, and no exchange of the old bonds having taken place, the defalcation of the bond company thus left the district with an outstanding indebtedness of $49,000.

The bond company was a Colorado corporation

with principal offices in Denver. One of its representatives called on the board of directors some five or six months prior to the issue of the refunding bonds, and during the intervening period had numerous conferences with the board, wherein the bond company representative seemed to advise and direct the procedure leading to the new bond issue. In following this course, as well as procuring the services of a bond broker, the board was acting in the ordinary and accepted way relative to such matters, and not contrary to any legal prohibition.

The unquestioned procedure followed, leading to the issue of the refunding bonds, was under the statutory provision of section 8376, C. L. 1921, which is as follows:

"That when the bonded indebtedness of any school district in this state has matured, or may hereafter mature, or has or may hereafter become redeemable at the pleasure of the district, and there shall not be funds in the treasury of such school district available for that purpose with which to redeem or pay such bonds, it shall be lawful for the board of directors of such school district to issue and sell new bonds, equal to the sum necessary and not otherwise provided for the payment of the bonds then matured or those then redeemable at the pleasure of such school district, and such bonds thus issued shall not be sold at a less price than their par value; Provided, It shall be lawful for the board of directors of any school district having a bonded indebtedness, to refund the same, at any time, with the consent of the bond owners, in bonds bearing a less rate of interest than the bonds so refunded and running for a longer time, which said bonds thus issued shall be exchanged at not less than par for the bonds outstanding. * * *."

It is said by intervener that the members of the board negligently turned over to the bond company for "just a receipt," bonds in their hands as trustees, for which the law requires them to account. This contention is based upon parts of section 8333, C. L. 1921, which are as follows:

"Every school board, unless otherwise especially provided by law, shall have power, and it shall be their duty:
* * *

"Sixth—To hold in trust for their district all real or personal property for the benefit of the school thereof."

While intervener does not rest his case upon negligence, he comments upon the alleged improvident and negligent acts of the board in delivering the refunding bonds to the bond company in the manner of which complaint is made herein, as well as the purported negligence of the board in not closely following the actions of the agent thus employed over the succeeding months which led into the defalcation and resulting loss to the district. He makes no intimation of a lack of fidelity or integrity on the part of the board, neither does he impute a corrupt motive.

Even if it be said that the board exercised poor judgment in its selection of a bond broker and in the dealings that followed, there is no claim that the board was not using its best judgment and acting in good faith. The overwhelming weight of authority clearly absolves such involuntary public officials from errors in judgment and the results thereof, and intervener does not assert to the contrary. Had the exchange here been fully effected, then no question would have arisen concerning the means employed, because it was within the scope of the discretionary authority vested in the board which is not curtailed by statute. It is not suggested that any member of the board was called upon to, or did, act in his individual capacity, but the entire unfortunate transaction was the act of the duly constituted board. According to all authority, it was a governmental agency functioning for a purely public purpose limited in scope only to educational advancement. As such agency, the sovereign spoke and acted. Whatever intervener claims was a statutory duty; namely, "to exchange the bonds," it could only be a board duty, there being no personal or individual duty involved. The board was called upon to act, not the individuals. If we have not said specifically that the

members of a school board are not liable individually for the improvident, but good-faith actions of the board when they lend their time and sincere efforts for a public purpose without compensation, we should and now do make that pronouncement. If it were otherwise, fear of personal liability would so paralyze such governmental agencies as to make their procurement impossible or their actions lethargic.

Intervener, to quote from his reply brief, says, "The point is, as we always maintained, that the defendants are trustees and must account as such." If this view is accepted, the relationship of the board to the public is not changed. If the trustees acted in this matter under a trust—which intervener claims is created by the statute above quoted—it was no less a governmental function. The duty, whether a trust duty, or otherwise, is still a public, governmental, duty to be performed within the discretion of the board, in good faith, as an agency of the state, and when so acting it did so in a purely political or sovereign capacity.

The judgment of the trial court is right and is accordingly affirmed.

MR. JUSTICE BURKE specially concurs.

MR. JUSTICE HILLIARD, MR. JUSTICE BOUCK and MR. JUSTICE YOUNG not participating.

MR. JUSTICE BURKE, specially concurring.

I think these defendants in error were trustees and must answer as such. But even so they had the right to employ the bond company. 2 Dillon Municipal Corp. (5th Ed.) §895.

The record shows that the directors followed a practice generally adopted under such circumstances and that no reasonable investigation would have suggested that the bond company was not responsible. Such being the facts and the law, the directors have discharged their trust. For this reason, I concur in the result.